UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| ESTATE OF DAMIEN PINNICK, ) | |
| Special Administrator, Cynthia Pinnick ) | 4:24-CV-26-TWP-KMB |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| LAWRENCE COUNTY SHERIFF'S ) | |
| DEPARTMENT A/K/A GREG DAY, ) | |
| ADVANCED CORRECTIONAL ) | |
| HEALTHCARE, INC. ) | |
| MELODY HOLT, ROY WASHINGTON, ) | |
| JOHN TARRANTS, JOHN PETERS ) | |
| JARED BILLS ) | |
| Defendants. ) | |

## AMENDED COMPLAINT

### Nature of the Case

1. This is an action for damages brought by Cynthia Pinnick on behalf of the Estate of Damien Pinnick against the Lawrence County Sheriff's Department (AKA Sheriff Greg Day), and Advanced Correctional Health Care, Inc. Melody Holt, Roy Washington, John Tarrants, John Peters, and Jared Bills are sued in their individual capacities. The Defendants recklessly and indifferently failed to provide Damien Pinnick proper medical treatment and accommodations in violation of the 8th and 14th Amendments to the United States Constitution, and have committed the Indiana torts of medical malpractice, negligence and/or caused the wrongful death of Damien Pinnick.

### Jurisdiction and Venue

2. Lawrence County is the county of preferred venue under Indiana Rules of Trial Procedure 75(A), as the allegations within this complaint arise out of conduct that occurred within

Lawrence County, Indiana. Lawrence County, Indiana, is within the jurisdiction of this court.

## Parties

3. Cynthia Pinnick ("Cynthia") is a citizen and resident of Lawrence County in the State of Indiana. Cynthia is the administrator of the estate for the decedent, her son, Damien Pinnick ("Damien"). Damien is survived by his dependent daughter, "K.P," who is a minor.

4. The Lawrence County Sheriff's Department ("LCSD") is located in the county seat of Lawrence County, which is in Bedford, Indiana. The Sheriff's Department is responsible for operating the Lawrence County Jail ("LCJ"), which is also located in Bedford, Indiana. At all relevant times, Greg Day was the elected Sheriff for Lawrence County, Indiana. In that role, Day was responsible for training and supervising jail employees; adopting, implementing, and enforcing jail policies and procedures; overseeing the customs and practices of the jail; and ensuring that the people in jail custody received necessary medical and mental health care and humane conditions of confinement, as required under the United States Constitution and other laws. Day was a final policymaker for the LCSD.

5. Defendant Advanced Correctional Healthcare, Inc., ("ACH") is a corporation headquartered in Franklin, TN which operates in Indiana as a for-profit foreign corporation, and was, at the time of the events giving rise to plaintiff's claims, contracted with the LCSD to provide medical care to inmates in the LCJ. ACH lists its registered agent in Indiana as "C T Corporation System, 334 North Senate Ave., Indianapolis, IN, 46204."

6. Melody Holt ("Holt") is a registered nurse, who was an employee of ACH, and assigned to the Lawrence County Jail in August of 2023.

2

7. Roy Washington ("Washington") is a nurse-practitioner, who was an employee of ACH, and was the responsible provider for the Lawrence County Jail in August of 2023.

8. John Tarrants ("Tarrants") was an employee of the LCSD during August of 2023.

9. John Peters ("Peters") was an employee of the LCSD during August of 2023.

10. Jared Bills ("Bills") was an employee of the LCSD during August of 2023

### Conditions Precedent

11. All conditions precedent to the initiation of this lawsuit have been fulfilled. A notice of Tort Claim was served on the Defendants on or about October 17, 2023.

### Factual Allegations

12. LCSD has a legal duty to provide adequate medical care to its inmates. This duty passes along to its employees, deputies, and jail staff.

13. ACH had a contract with LCSD to provide medical services to its inmates at the LCJ.

14. The contract between ACH and LCSD was in effect between August 1, 2023, and August 31, 2023. As a part of this contract, all ACH employees owe a duty of care to inmates at the LCJ.

15. In recent years, methamphetamine and opioid addictions has skyrocketed across the nation, including in Southern Indiana, and this fact has been widely reported and discussed in the national, state, and local news media.

16. It is well-known that drug withdrawal can cause serious health issues, including death if not properly monitored and treated.

17. It is common for prison and jail staff at the federal, state, and local levels to encounter inmates who suffer from heroin withdrawal while in custody. In response, many facilities, including those administered by the Federal Bureau of Prisons, have implemented policies,

procedures, and training specifically designed to monitor and protect these inmates. Other facilities, including the LCJ, have done little, if anything to address the problem.

18. ACH was responsible for providing appropriate/adequate medical treatment at the LCJ.

19. ACH and LCSD were responsible to ensure that only inmates who were medically fit for incarceration were admitted to the jail and incarcerated at the LCJ.

20. On or about August 1, 2023, Damien was arrested during a traffic stop, and was processed into the custody of the LCSD.

21. Damien was arrested for allegedly possessing marijuana, methamphetamine, and drug paraphernalia.

22. Damien was not free to leave the jail.

23. As a pretrial detainee, the LCSD and ACH were obligated under the 14th Amendment of the United States Constitution to provide Damien adequate medical care.

24. The LCSD and ACH were aware at the time of Damein's arrest that he was a daily user of methamphetamines.

25. Upon admission to the LCJ a proper medical assessment was not completed.

26. During Damein's incarceration he was not properly monitored or treated for possible drug withdrawals.

27. Damien had a history of seizures and mental health issues.

28. LCSD and ACD were aware of Damien's history of seizures and mental health issues and failed to offer proper treatment.

29. Damien was never provided any medication for his seizure disorder and/or mental health issues.

30. Damien became severely emaciated during his period of incarceration.

31. LCSD and ACH failed to provide, monitor, and/or ensure that Damien was consuming adequate food and liquids during his incarceration.

32. LCSD and ACH failed to properly train LCSD deputies in the intake process.

33. ACH did not properly staff the jail with medical personnel to conduct the intake procedure.

34. On or about August 14, 2023, Licensed Social Worker ("LSW"), Jim Baugh, an ACH, employee met with Damien.

35. Baugh noted that Damien was disheveled, and that he had difficult problem solving along with delayed responses. Baugh was also aware that Damien had previous issues with seizures and delusions. Baugh further added in his notes, "He is impulsive with poor insight and judgment. Behaviors are not within normal limits."

36. Baugh recommended that Damien be placed in an isolated observation cell with 15-minute checks.

37. LCSD failed to adhere to these 15-minute checks.

38. In August of 2023, the LCSD did not have any policy in place requiring LCSD and/or ACH employees conduct daily meetings with individuals in segregated cells.

39. Damien was never seen again by Baugh.

40. Damien was never seen again by any mental health provider.

41. Supervisory staff for LCSD did not make daily visits to Damien while he was in a designated segregated cell.

42. The Sheriff and/or an authorized designee of the Sheriff did not make weekly visits to Damien while he was in a designated segregated cell.

43. It was not a custom or enforced policy of the LCSD to conduct these daily and/or weekly visits to inmates in isolated cells.

44. ACH and LCSD only staffed a LSW at the LCJ once a week during August of 2023.

45. The LCSD and ACH decision to place Damian in solitary confinement prevented other inmates from soliciting outside medical treatment for the obvious neglect to Damien's wellbeing.

46. During his time in the solitary cell, Damian showed obvious signs of mental and physical impairment.

47. Damien's condition was such that it was clear and obvious that he needed immediate medical attention.

48. On August 24, 2023, Damien was transported from his cell to visit the nurse, Melody Holt.

49. Damien was transported to the medical appointment by Bills and Peters. During the walk to the see Holt, Damien passed out in the elevator.

50. Peters and Bills was aware prior to the visit with Holt that Damien was eating very little, if anything at all.

51. Peters had noticed that Damien had vomited on several occasions and had diarrhea.

52. Damien presented as weak and unstable when assessed by Holt.

53. Holt was aware that Damien had passed out during his walk from his cell to medical.

54. Damien had to be physically assisted to walk into and out of Holt's office, and he had to be assisted out of his chair.

55. Peters told Hold that Damien "did not look good."

56. Holt was aware or should have been aware that Damien had not been eating and had been experiencing vomiting/diarrhea.

57. Holt was aware of at least six medical refusal documents that were submitted to her detailing that Damien was not eating.

58. Jail records showed that Damien was 70 inches tall, and weighed only 118 pounds, making Damien dangerously underweight. Holt was aware of those measurements.

59. Holt provided no meaningful medical care to Damein.

60. Washington did not review Holt's evaluation.

61. As the responsible physician, Washington, should have reviewed any evaluation conducted by other qualified health providers.

62. Following his visit with Holt, Damien was moved to a different cell block.

63. Holt cleared Damien to be moved from his suicide watch cell, to an administrative segregated observation cell in M-block without approval or input from Baugh or any other mental health provider.

64. Damien was once again placed in an isolated cell.

65. Shortly after Damien was placed in this new isolated cell, he fell out of his bunk on to the floor.

66. He remained laying on the floor for hours.

67. Tarrants, Peters, and Bills were all aware that Damien had fallen to the floor.

68. No meaningful observations were conducted by the jail officers responsible for his health and safety including Tarrants, Peters, and Bills.

69. Damien did not eat any food while in his isolated cell in M-Block.

70. Tarrants, Peters, and Bills were all aware that Damien had not been eating his food and/or consuming liquids.

71. On or about August 25, 2023, Damien's attorney made a visit to the jail to speak with him.

72. Damien's medical condition was so poor that he was unable to be transported from his cell to the attorney visitation room.

73. Jail staff and ACH employees were aware that Damien was unable to get from his cell to the visitation room so they instead required his attorney to visit him his cell.

74. It was not common practice to have an attorney visit an inmate in a holding cell.

75. Damien's cell area smelled of urine and feces.

76. LCSD and ACH did not provide proper medical treatment to Damien while he was in his solitary cell. This failure to provide proper medical treatment was the result of customs and accepted practices enacted by LCSD and ACH.

77. During August of 2023, it was the policy of ACH and LCSD not to have medical personnel conduct rounds of the segregation cells.

78. Damien struggled to walk, stand, and speak.

79. Damien was not consuming adequate amounts of food and water.

80. Even though it was common knowledge in the jail that Damien was not consuming adequate amounts of food and water, proper protocols to document and intervene were not followed.

81. Tarrants, Bills, and Peters were all personally aware that Damien was malnourished and not consuming adequate amounts of food and water.

82. The medical needs of Damien were plain and obvious to both licensed health practitioners and lay person's alike.

83. Despite the obvious signs that Damien needed prompt medical attention, no ACH and LCSD employee provided Damien meaningful medical care.

84. No ACH employee visited Damien in his cell.

85. Ind. Admin. Code requires a licensed physician shall be responsible for medical services in each jail.

86. No responsible physician ever examined Damien while he was incarcerated.

87. The responsible medical provider for the LCJ was Washington.

88. Washington is not a medical doctor, but is a nurse-practitioner.

89. Washington failed in his duties as the responsible provider to ensure inmates were provided proper and adequate medical/mental health treatment.

90. ACH and LCSD contract required that a physician or mid-level provider visit the LCJ only on a weekly basis.

91. ACH and LCSD agreed to substitute the requirement of a weekly physician's visit with a weekly visit by a mid-level practitioner.

92. Ind. Admin. Code requires that inmates receive a medical assessment by the responsible physician or a licensed nurse within 14 days of their arrival at the jail.

93. Damien did not receive a medical assessment by the responsible physician or a licensed nurse within 14 days of his arrival at the LCJ.

94. In August of 2023, it was common that medical assessments of inmates did not occur within 14 days of an inmate's arrival.

95. Policy and Decision makers at LCSD were aware that inmates (such as Pinnick) were not having proper medical examinations within the required 14-day period.

96. Policy and Decision makers at ACH including (Washington) were aware that inmates (such as Pinnick) were not having proper medical examinations within the required 14-day period.

97. Holt was aware that inmates (such as Pinnick) were not having proper medical examinations within the required 14-day period.

98. No diagnostic tests or medical screening for disease were ordered for Damien.

99. The lack of an onsite responsible physician was a result of ACH and LCSD procedure, policy, and practice.

100. ACH and LCSD failed to properly staff the jail with sufficient licensed nurses, nurse practitioners, physicians, qualified mental health providers, and/or physical assistants.

101. ACH and LCSD could have prevented Damien from further suffering and/or death if staff had arranged appropriate medical care.

102. The names of all ACH and LCSD employees and deputies that neglected to care for Damien are not known by the Plaintiff at this time.

103. Damien's symptoms were obvious to medical and lay person (jail defendants) alike that Damien was in need of immediate medical assistance. Failing to offer assistance to Damien, to have him transferred to a medical facility, or to notice these symptoms constitutes wanton disregard, incompetence, and/or reckless indifference.

104. LCSD would have been financially liable for any medical costs provided to Damien, had he been transported as a prisoner to an off-site medical facility.

105. ACH and LCSD were responsible for determining which inmates should be transferred to offsite facilities for medical treatment.

106. ACH and LCSD failed to properly train, supervise, and educate their employees on when to transport an inmate for off-site emergent care.

107. ACH and LCSD failed to properly train, supervise, and educate their employees on when to transport an inmate for acute drug withdrawal.

108. ACH and LCSD failed to properly train, supervise, and educate their employees on properly documenting important health information such as meal refusal forms, and ensuring that its officers and contractors communicate this information to one another.

109. ACH and LCSD had a policy and practice of understaffing the LCJ with medical personnel. This policy and practice prevented timely transfers of inmates to emergency

medical facilities, allowed the intake of inmates without a proper medical screening, and left the jail without individuals license to provide medical care to the inmates.

110. ACH and LCSD did not transport Damien to an emergency medical facility during the course of his custodial sentence. This failure to transport was despite clear signs that Damien was suffering serious health problems.

111. Defendants ACH and LCSD follow a policy or practice of removing inmates with mental health problems and/or drug withdrawal symptoms from group cell blocks to single cells and as a consequence do not provide inmates with adequate medical assessments or treatments.

112. Damien had an obvious medical need. This need was clear by not only his symptoms but his emaciated appearance, and failure to consume adequate nutrition.

113. Damien received no meaningful medical treatment while he was incarcerated at the LCJ.

114. The ACH and LCSD, and their respective staffs, including the individual defendants, who interacted with Damien should have ensured that he got proper medical treatment.

115. Jail employees openly discussed the need to take Damien to a hospital, yet no transfer was ever made.

116. Defendants collectively failed to take reasonable measures to provide treatment and assessment for Damien's serious medical needs.

117. During the morning of August 26, 2023, Damien could be heard moaning in his cell.

118. Shortly before 1:00 P.M. on August 26, 2023, Damien was found dead in his cell.

119. August 26, 2023, was a Saturday.

120. LCSD and ACH did not staff the jail with any qualified medical provider and/or qualified mental health provider on weekends during August of 2023.

121. The coroner's report listed the death as due to severe electrolyte imbalance. (See Exhibit A).

122. Proper medical intervention would have prevented this death.

123. The lack of medical intervention was a product of policies, customs, and/or failures to train/supervise/monitor enacted by LCSD and ACH.

124. These failures by LCSD and ACH constitutes deliberate indifference and/or gross negligence.

125. LCJ failed to comply with the standards set forth by the Indiana Administrative Code to ensure the health and safety of its inmates.

126. LCJ failed to comply with the standards set forth by the American Correctional Association ensure the health and safety of its inmates.

127. Damien's wrongful death was the result of the inaction, negligence, deliberate indifference, and/or failures of the ACH and LCSD, and their respective employees, including the individual defendants.

128. The actions and inaction of the individual defendants were conducted within the scope of their employment or contract with ACH and the LCSD respectively.

129. The actions and inactions of the defendants were taken under color of state law.

## Statement of Claims

### Count I- Policy Procedure and Practice, 42 USCA sec. 1983 (LCSD and ACH)

130. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

131. Damien's death was caused by the failures of ACH and the LCSD to properly supervise, train, and/or to enforce its policies to identify, monitor, and screen sick inmates for admission to the jail.

132. Damien's death was caused by the policy of ACH and the LCSD to place suicidal, ill, and/or inmates suffering withdrawal symptoms in individual cells without meaningful medical/mental health examination or protocols.

133. The failure by ACH and the LCSD to properly implement a policy to monitor and care for inmates in individual cells constitutes a *Monell* claim, and is a violation under Federal Law.

134. The failure by ACH and the LCSD to properly implement policy to monitor and care for inmates during the intake process is a *Monell* claim, and is a violation of Federal Law.

135. Damien's death was caused by the failures of ACH and the LCSD to properly supervise, train, and/or to enforce its policies to identify, monitor, and treat inmates suffering from opiate withdrawals, infections, and other communicable diseases.

136. Damien's death was caused by the failures of ACH and the LCSD to properly supervise, train, and/or to enforce its policies to identify, monitor, and treat inmates who are malnourished and/or not consuming sufficient food and water.

137. The failure by ACH and the LCSD to properly implement a policy to monitor and care for inmates with drug withdrawal constitutes a *Monell* claim, and is a violation under Federal Law.

138. The failure by ACH and the LCSD to properly implement policy and training to identify and/or approve inmates in need of medical care at off-site emergency facilities and/or provide diagnostic testing falls under a *Monell* claim, and is a violation of Federal Law.

139. The failure by ACH and the LCSD to properly implement policy and training to ensure that inmates in solitary confinement are regularly and effectively monitored in person as opposed to by video falls under a *Monell* claim, and are a violation of Federal Law.

140. The failure by ACH and the LCSD to properly staff the jail with proper medical facilities and medically trained personnel falls under a *Monell* claim, and are a violation of Federal Law.

141. The custom, policy, and practice by ACH and the LCSD to fail to have a responsible physician conduct (and/or review) a medical examination of inmates within 14 days of their intake constitutes deliberate indifference.

142. Due to either an express policy or a widespread practice and custom, ACH and the LCSD's failure (who were acting under the color of state law), to properly treat, monitor, and/or transport inmates, who were in need of urgent medical treatment violates the Plaintiff's rights under the 14th Amendment of the United States Constitution to provide appropriate medical care.

143. Damien suffered and ultimately died because of these constitutional violations.

144. By way of this claim, Plaintiffs are seeking all available compensatory and punitive damages, remedies, and just relief, including recovery of attorney fees and costs.

## Count II- § 1983 claim, Violation of the Eighth and Fourteenth Amendment

### (All individual Defendants)

145. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

146. Damien was in the lawful custody of the LCSD.

147. Damien had a serious medical need.

148. Defendants were aware that Damien was in need of obvious medical treatment at the jail.

149. Defendants were reckless and deliberately indifferent in the manner that they deprived Damien of adequate medical treatment.

150. Damien had the right to be free from cruel and unusual punishment under the 8th Amendment, and as a right as pretrial detainee to adequate medical care under the 14th Amendment.

151. Damien's death and suffering was the result of the Defendants' reckless and deliberately indifferent treatment of him.

152. Damien's need for medical attention was clear and obvious to professional and lay persons alike.

153. Damien's need for mental health care was clear and obvious to professional and lay persons alike.

154. Defendants were all government actors, who were acting under the color of state law as to all times relevant to the complaint.

155. The Defendants were obligated to provide medical treatment and assessment to Damien.

156. The Defendants failed to provide proper medical treatment and assessment to Damien.

157. This failure to provide medical treatment and assessment was intentional, reckless, and/or indifferent.

158. The failure to provide medical treatment and assessment to the Damien is a violation of his 14th and 8th Amendment Right to be free from cruel and unusual punishment.

159. By way of this claim, Plaintiff is seeking all available compensatory and punitive damages, remedies, and just relief, including recovery of attorney fees and costs.

**Count III –State Law Claims of Negligence/Wrongful Death against all Defendants**

160. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

161. All Defendants owed Damien a duty of care.

162. Defendants were negligent in their failure to provide proper medical care to Damien.

163. ACH and the LCSD are liable for the actions of their jail personnel, deputies, nurses, and contracted entities/personnel committed within the scope of their employment, to the extent that any officers or employees were purportedly acting in accordance with policies, procedures or practices that are asserted in defense of their actions.

164. ACH and the LCSD are vicariously liable for the actions of its employees and contractors.

165. ACH and the LCSD have a duty to provide adequate medical care to inmates at the LCJ.

166. Defendants failed to comply with the applicable standard of care to Damien, by failing to provide him proper oversight and care.

167. The failures by the Defendants caused the wrongful death of Damien.

168. ACH and LCSD failed to comply with the terms of 210 Ind. Admin. Code 3-1-11.

169. The custom, policy, and practice of ACH and the LCSD to fail to have a responsible physician conduct (and/or review) a medical examination of inmates within 14 days of their intake constitutes per se negligence.

170. The failures by the Defendants created a "loss of chance," to save Damien's life.

171. By way of this claim, Plaintiff is seeking all available & appropriate damages, remedies, and just relief, including but not limited to reasonable medical, hospital, funeral and burial expenses and lost earnings of the decedent resulting from the wrongful act or omission, and loss of love, care, and affection.

## Prayer for Relief

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully pray for relief and judgment, as follows:

I. Awarding compensatory damages in favor of Plaintiff against all Defendants jointly and severally, for all damages sustained as a result of Defendants' wrong doing, in an amount to be proven at trial.

II. Awarding punitive damages in favor of Plaintiff against all individual Defendants jointly and severally, for all damages sustained as a result of Defendants' wrong doing, in an amount to be proven at trial.

III. Awarding Plaintiff his reasonable costs and expenses incurred in this action, including attorney fees and expert fees; and

IV. Such other and further relief as the Court may deem just and proper.

Respectfully submitted,

***/s/ Charles C. Hayes***
Charles C. Hayes 24220-53
Jane H. Ruemmele, 6555-49
HAYES RUEMMELE, LLC
22 E. Washington Street Ste. 610
Indianapolis, IN 46204
317-491-1050, FAX 317-491-1043
Charles@chjrlaw.com
Jane@chjrlaw.com

/s/ *Steven P. Lammers*, 26443-64
Mandel Rauch & Lammers, P.C.
704 Adams Street, Suite F
Carmel, IN 46032
(317) 581-7440
slammers@mhmrlaw.com

## JURY TRIAL DEMAND

Plaintiff respectfully request that this matter be tried by a jury on all issues.

Respectfully submitted,

***/s/ Charles C. Hayes***

Charles C. Hayes 24220-53
Jane H. Ruemmele, 6555-49
HAYES RUEMMELE, LLC
22 E. Washington Street Ste. 610
Indianapolis, IN 46204
317-491-1050, FAX 317-491-1043
Charles@chjrlaw.com
Jane@chjrlaw.com

/s/ *Steven P. Lammers*, 26443-64
Mandel Rauch & Lammers, P.C.
704 Adams Street, Suite F
Carmel, IN 46032

(317) 581-7440
slammers@mhmrlaw.com